## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **HEATHER PEET** | 1:20-CV-01805 |
| **Plaintiff,** | |
| **v.** | **COMPLAINT** |
| **ICON REALTY MANAGEMENT LLC, T & T REALTY MANAGEMENT LLC, TERRENCE LOWENBERG, TODD COHEN, JOSH HACKEL, LOUISE MARTIN, and AGNIESZKA DOLINSKA a/k/a AGNES DOLINSKI,** | |
| **Defendants.** | |

Plaintiff Heather Peet alleges, by and through her attorneys, upon personal knowledge as to some and information and belief as to the rest, as follows:

### NATURE OF THE ACTION

1.     Plaintiff Heather Peet charges that Defendants, her former employers and their agents, violated her rights under the Family Medical Leave Act of 1993, 29 U.S.C. Section 2601 et seq. ("FMLA").

2.     Plaintiff Peet also charges that Defendants, her former employers and their agents, violated her rights under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL").

3.     Plaintiff Peet seeks injunctive relief against each Defendant, as well as economic, compensatory, and punitive damages, jointly and severally from Defendants

as a result of Defendants' actions that violated the FMLA and the NYCHRL.

4.      In addition, Peet seeks reasonable attorneys' fees, costs and expenses under the attorney-fee shifting provisions of the FMLA and NYCHRL.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over the clams brought under the FMLA pursuant to 28 U.S.C. Section 1331.

6.      The Court has jurisdiction over the claims brought under the NYCHRL pursuant to 28 U.S.C. Section 1367.

7.      Venue is proper in this county pursuant to 28 U.S.C. Section 1391(b)(2).

## PARTIES

### Plaintiff Heather Peet

8.      Plaintiff Heather Peet is a natural adult individual and citizen of the State of New York.

From 2015 until 2017, Plaintiff Peet was an employee employed by Defendant Icon Realty Management LLC.

9.      From 2015 until 2017, Plaintiff Peet was an employee employed by Defendant T & T Realty Management LLC.

10.     From 2015 until 2017, Plaintiff Peet was an employee employed by Defendant Terrence Lowenberg.

11.     From 2015 until 2017, Plaintiff Peet was an employee employed by Defendant Todd Cohen.

12.     From 2015 until 2017, Plaintiff Peet was an employee employed by Defendant Josh Hackel.

13.     Plaintiff Peet is an "eligible employee" under the meaning of the FMLA, 29 U.S.C. Section 2611(2). When she requested leave covered under the FMLA, she had been employed for at least 12 months by Defendants Icon Realty Management LLC and T & T Realty Management LLC for at least 1,250 hours of service during the previous 12-month period, and Defendants Icon Realty Management LLC and T & T Realty Management LLC employed her at a worksite at which they employed more than 50 employees within 75 miles of that worksite.

14.     Plaintiff Peet suffered a "serious health condition" under the meaning of the FMLA, 29 U.S.C. Section 2611(11). She was diagnosed with lymphoma, an illness, injury, impairment and/or physical condition, which involved continuing treatment by a health care provider.

<u>Defendant Icon Realty Management LLC</u>

15.     Defendant Icon Realty Management LLC is New York limited liability company duly authorized to do business and does do business in New York with principal offices at 419 Lafayette Street, 5th Fl, New York, NY.

16.     Defendant Icon Realty Management LLC is an "employer" under the meaning of the FMLA, 29 U.S.C. Section 2611(3) because it is engaged in commerce or in industry or activity affecting commerce who employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current and/or preceding calendar year.

17.     From 2015 to 2017, Defendant Icon Realty Management LLC was Plaintiff Peet's "employer" under the meaning of the NYCHRL, N.Y.C. Admin. Code Sections 8-102 and 8-107(1).

18.     At all times during Plaintiff's employment with Defendant Icon Realty Management LLC, Defendant Terrence Lowenberg has owned and operated Defendant Icon Realty Management LLC.

19.     At all times during Plaintiff's employment with Defendant Icon Realty Management LLC, Defendant Todd Cohen has owned and operated Defendant Icon Realty Management LLC.

20.     At all times during Plaintiff's employment with Defendant Icon Realty Management LLC, Defendant Josh Hackel has been the vice-president of Defendant Icon Realty Management LLC.

21.     In 2017, Defendant Louise Martin was employed by Defendant Icon Realty Management LLC.

22.     At all times during Plaintiff's employment with Defendant Icon Realty

Management LLC, Defendant Agnieszka Dolinska a/k/a Agnes Dolinski was employed

by Defendant Icon Realty Management LLC.

<u>Defendant T & T Realty Management LLC</u>

23.     Defendant T & T Realty Management LLC is New York limited liability company

duly authorized to do business and does do business in New York with principal offices

at 419 Lafayette Street, 5th Fl, New York, NY.

24.     Defendant T & T Realty Management LLC is an "employer" under the meaning

of the FMLA, 29 U.S.C. Section 2611(3) because it is engaged in commerce or in

industry or activity affecting commerce who employed 50 or more employees for each

working day during each of 20 or more calendar workweeks in the current and/or

preceding calendar year.

25.     From 2015 to 2017, Defendant Icon Realty Management LLC was Plaintiff Peet's

"employer" under the meaning of the NYCHRL, N.Y.C. Admin. Code Sections 8-102 and

8-107(1).

26.     At all times during Plaintiff's employment with Defendant T & T Realty

Management LLC, Defendant Terrence Lowenberg has owned and operated Defendant

T & T Realty Management LLC.

27.     At all times during Plaintiff's employment with Defendant T & T Realty Management LLC, Defendant Todd Cohen has owned and operated Defendant T & T Realty Management LLC.

28.     At all times during Plaintiff's employment with Defendant T & T Realty Management LLC, Defendant Josh Hackel has been the vice-president of Defendant T & T Realty Management LLC.

29.     In 2017, Defendant Louise Martin was employed by Defendant T & T Realty Management LLC.

30.     At all times during Plaintiff's employment with Defendant T & T Realty Management LLC, Defendant Agnieszka Dolinska a/k/a Agnes Dolinski was employed by Defendant T & T Realty Management LLC.

Defendant Terrence Lowenberg

31.     Defendant Terrence Lowenberg is a natural adult individual and citizen of the State of New York residing at 250 E 73rd Street, Apartment 7E, New York, NY.

32.     Defendant Lowenberg is an "employer" under the meaning of the FMLA, 29 U.S.C. Section 2611(3) because his actions against Plaintiff Peet, made unlawful by the FMLA, were taken directly or indirectly, in the interest of Defendant Icon Realty Management LLC and Defendant T & T Realty Management LLC.

33.     From 2015 to 2017, Defendant Lowenberg was Plaintiff Peet's "employer" under the meaning of the NYCHRL, N.Y.C. Admin. Code Sections 8-102 and 8-107(1).

6

34.     From 2015 to 2017, Defendant Lowenberg exercised managerial or supervisory responsibility over Plaintiff Peet under the meaning of N.Y.C. Admin. Code 8-107(13)(b)(1). Therefore, Defendant Icon Realty Management LLC and Defendant T & T Realty Management LLC are strictly liable to Plaintiff Peet for his discriminatory acts against Plaintiff Peet that violated the NYCHRL.

35.     Defendant Lowenberg is also individually liable for his own discriminatory acts against Plaintiff Peet that violated the NYCHRL under N.Y.C. Admin. Code 8-107(1).

36.     Defendant Lowenberg is also individually liable for his own acts which aided and abetted his co-defendants acts that discriminated against Plaintiff Peet in violation of the NYCHRL under N.Y.C. Admin. Code 8-107(6).

<u>Defendant Todd Cohen</u>

37.     Defendant Todd Cohen is a natural individual and citizen of the State of New York residing at 575 Park Avenue, New York, NY.

38.     Defendant Cohen is an "employer" under the meaning of the FMLA, 29 U.S.C. Section 2611(3) because his actions against Plaintiff Peet, made unlawful by the FMLA, were taken directly or indirectly, in the interest of Defendant Icon Realty Management LLC and Defendant T & T Realty Management LLC.

39.     From 2015 to 2017, Defendant Cohen was Plaintiff Peet's "employer" under the meaning of the NYCHRL, N.Y.C. Admin. Code Sections 8-102 and 8-107(1).

40.    From 2015 to 2017, Defendant Cohen exercised managerial or supervisory responsibility over Plaintiff Peet under the meaning of N.Y.C. Admin. Code 8-107(13)(b)(1). Therefore, Defendant Icon Realty Management LLC and Defendant T & T Realty Management LLC are strictly liable to Plaintiff Peet for his discriminatory acts against Plaintiff Peet that violated the NYCHRL.

41.    Defendant Cohen is also individually liable for his own discriminatory acts against Plaintiff Peet that violated the NYCHRL under N.Y.C. Admin. Code 8-107(1).

42.    Defendant Cohen is also individually liable for his own acts which aided and abetted his co-defendants acts that discriminated against Plaintiff Peet in violation of the NYCHRL under N.Y.C. Admin. Code 8-107(6).

<u>Defendant Josh Hackel</u>

43.    Defendant Josh Hackel is a natural individual and citizen of the State of New York residing at 239 Central Park West, Apartment 12D. New York, NY.

44.    Defendant Hackel is an "employer" under the meaning of the FMLA, 29 U.S.C. Section 2611(3) because his actions against Plaintiff Peet, made unlawful by the FMLA, were taken directly or indirectly, in the interest of Defendant Icon Realty Management LLC and Defendant T & T Realty Management LLC.

45.    From 2015 to 2017, Defendant Hackel was Plaintiff Peet's "employer" under the meaning of the NYCHRL, N.Y.C. Admin. Code Sections 8-102 and 8-107(1).

8

46.     From 2015 to 2017, Defendant Hackel exercised managerial or supervisory responsibility over Plaintiff Peet under the meaning of N.Y.C. Admin. Code 8-107(13)(b)(1). Therefore, Defendant Icon Realty Management LLC and Defendant T & T Realty Management LLC are strictly liable to Plaintiff Peet for his discriminatory acts against Plaintiff Peet that violated the NYCHRL.

47.     Defendant Hackel is also individually liable for his own discriminatory acts against Plaintiff Peet that violated the NYCHRL under N.Y.C. Admin. Code 8-107(1).

48.     Defendant Hackel is also individually liable for his own acts which aided and abetted her co-defendants acts that discriminated against Plaintiff Peet in violation of the NYCHRL under N.Y.C. Admin. Code 8-107(6).

<u>Defendant Louise Martin</u>

49.     Defendant Louise Martin is a natural individual and citizen of the State of California. Her address is unknown to Plaintiff, but known to Defendants and will be sought in the course of this litigation.

50.     Defendant Martin is an "employer" under the meaning of the FMLA, 29 U.S.C. Section 2611(3) because her actions against Plaintiff Peet, made unlawful by the FMLA, were taken directly or indirectly, in the interest of Defendant Icon Realty Management LLC and Defendant T & T Realty Management LLC.

51.     In 2017, Defendant Martin was Plaintiff Peet's "employer" under the meaning of the NYCHRL, N.Y.C. Admin. Code Sections 8-102 and 8-107(1).

52.     In 2017, Defendant Martin exercised managerial or supervisory responsibility over Plaintiff Peet under the meaning of N.Y.C. Admin. Code 8-107(13)(b)(1). Therefore, Defendant Icon Realty Management LLC and Defendant T & T Realty Management LLC are strictly liable to Plaintiff Peet for her discriminatory acts against Plaintiff Peet that violated the NYCHRL.

53.     Defendant Martin is also individually liable for her own discriminatory acts against Plaintiff Peet that violated the NYCHRL under N.Y.C. Admin. Code 8-107(1).

54.     Defendant Martin is also individually liable for her own acts which aided and abetted her co-defendants acts that discriminated against Plaintiff Peet in violation of the NYCHRL under N.Y.C. Admin. Code 8-107(6).

<u>Defendant Agnieszka Dolinska a/k/a Agnes Dolinski</u>

55.     Defendant Agnieszka Dolinska a/k/a Agnes Dolinski is a natural individual and citizen of the State of New Jersey. Her address is unknown to Plaintiff, but known to Defendants and will be sought in the course of this litigation.

56.     Defendant Dolinska is an "employer" under the meaning of the FMLA, 29 U.S.C. Section 2611(3) because her actions against Plaintiff Peet, made unlawful by the FMLA, were taken directly or indirectly, in the interest of Defendant Icon Realty Management LLC and Defendant T & T Realty Management LLC.

57.     From 2015 to 2017, Defendant Dolinski was Plaintiff Peet's "employer" under the meaning of the NYCHRL, N.Y.C. Admin. Code Sections 8-102 and 8-107(1).

58.     In 2017, Defendant Dolinska exercised managerial or supervisory responsibility over Plaintiff Peet under the meaning of N.Y.C. Admin. Code 8-107(13)(b)(1). Therefore, Defendant Icon Realty Management LLC and Defendant T & T Realty Management LLC are strictly liable to Plaintiff Peet for her discriminatory acts against Plaintiff Peet that violated the NYCHRL.

59.     Defendant Dolinska is also individually liable for her own discriminatory acts against Plaintiff Peet that violated the NYCHRL under N.Y.C. Admin. Code 8-107(1).

60.     Defendant Dolinska is also individually liable for her own acts which aided and abetted her co-defendants acts that discriminated against Plaintiff Peet in violation of the NYCHRL under N.Y.C. Admin. Code 8-107(6).

## FACTS

### Defendants' Business Operations in New York City

61.     According to its website[1], "Icon Realty Management LLC is a multi-faceted investment and management company located in New York City. The firm owns and manages over 1,800 apartment units located throughout the city in some of Manhattan's most desirable neighborhoods including: the Upper East Side, Greenwich Village, Chelsea and the Lower East Side."

---

[1] www.iconrealtymgmt.com

62.    Defendant Icon Realty Management LLC has also been a defendant in at least 23 New York state court lawsuits since 2014, or about 4 per year, according to a New York State Courts Electronic Filing record search.

63.    Defendant Icon Realty Management LLC has also been the subject of numerous exposés in the press, such as

   a. *Life Inside an Icon Realty Building is a Living Hell* [2];

   b.  *East Village Tenants Say 'Enough Is Enough' to Alleged Predatory Landlord* [3]; and

   c.  *City Serves Stop Work Order on Icon Realty-Owned Building for Installing Gas Pipe Without Permit Across from Deadly 2nd Avenue Blast Zone* [4].

64.    Defendant Terrence Lowenberg has also been the subject of numerous exposés in the press, including

   a. *Icon Realty Principal Faces Potential Criminal Charges for 'False Filings' at DOB* [5]; and

   b. *Notorious East Village Landlord Uses Street Art to Paint a Prettier Picture* [6].

65.    Defendant Icon Realty Management LLC was the subject of a joint investigation by *New York State Office of the Attorney General* and the *New York City Housing and Preservation & Development Tenant Harassment Prevention Task Force* following tenant protests and reports of dangerous living conditions in Defendant Icon's buildings.

---

[2] https://www.boweryboogie.com/2016/03/life-inside-an-icon-realty-building-is-a-living-hell-photos/
[3] https://bedfordandbowery.com/2015/11/east-village-tenants-say-enough-is-enough-to-alleged-predatory-landlord/
[4] https://evgrieve.com/2015/03/city-serves-stop-work-order-on-icon.html
[5] https://www.boweryboogie.com/2016/06/icon-realty-principal-faces-potential-criminal-charges-false-filings-dob/
[6] https://bedfordandbowery.com/2016/07/notorious-east-village-landlord-tries-to-paint-a-prettier-picture/

66.     According to the joint investigation press release issued by the *New York State Office of the Attorney General*, "Tenants in several ICON-owned rent-regulated buildings in the East Village, the Lower East Side, and Brooklyn were forced to live in adverse conditions, enduring excessive dust and debris from construction in the building common areas and apartments, inconsistent and irregular heat and hot water, and lack of cooking gas and elevator service for extended periods. The Task Force investigation found that, on multiple occasions, ICON failed to obtain Department of Buildings (DOB) work permits, performed construction outside the scope of permits issued, and failed to appropriately clean or maintain the construction work areas. The Task Force investigation also found that ICON ignored tenants' requests for repairs, failed to timely correct housing and building code violations, and subjected tenants to long-lasting interruptions of heat, hot water, and cooking gas services."

67.     Following the joint investigation, the *New York State Office of the Attorney General* entered into a settlement agreement with Defendant Icon Realty Management LLC that required Defendant to clear all building code violations, implement safe construction practices, provide tenants with rent abatements during disruptions of essential services and to provide a tenant liaison. A monitor was also appointed to make sure Defendant lived up to the settlement. The agreement also required Defendant pay $300,000 in penalties to New York State and $200,000 to the City of New York.

13

68.     An official press release from the *New York State Office of the Attorney General* following the settlement included statements from local officials. For example, *Mayor de Blasio* was quoted as saying, "Property owners in this City have a clear legal responsibility to their tenants and those duties were *repeatedly violated by [Icon]*. We will continue to work hand in glove with our law enforcement partners to protect New York tenants and punish *deadbeat landlords*." (emphasis added). And *City Councilmember Rosie Mendez* was quoted as saying, "Despite meetings and conference calls with my office and the tenants, Icon failed to make construction and repair work timely creating a hostile and unsafe environment for the tenants... Today's settlement, among other things, will ensure that Icon establishes safe construction practices and will provide rent abatement to the tenants to compensate them during the time they lived without essential services."

69.     To-date, the housing advocacy coalition comprising over 18 advocacy groups, non-profits, and tenant rights lawyers, *Stabilizing NYC*, continues to list Defendant Icon Realty Management LLC as one of the ten worst predatory equity landlords in New York City.[7]

70.     *Stabilizing NYC* defines predatory equity practices to include "aggressively pushing rent-stabilized tenants out using a wide range of harassing techniques, some

---

[7] https://stabilizingnyc.org/our-work/target-landlords/

even illegal, including frivolous lawsuits and failing to provide heat and other basic services."[8]

71.     According to their website [9], "Stabilizing NYC is a coalition comprised of a legal service provider, a housing advocacy organization, and eighteen grassroots organizations who have come together to combat tenant harassment and preserve affordable housing for the New Yorkers who need it most. This coalition combines legal, advocacy and organizing resources into a citywide network to help tenants take their predatory equity landlords against harassment."

72.     In 2019, Following the settlement with the *New York State Office of the Attorney General*, a lawsuit was filed against Defendant Icon Realty Management LLC alleging continued tenant harassment and housing code violations. The lawsuit was captioned *Bauman v. Icon Realty Management LLC, et al.*, Index. No.: 154277/2019, in the Supreme Court of the State of New York, County of New York.

73.     A lawsuit was also filed against Defendant Icon Realty Management LLC, Defendant Terrence Lowenberg, Todd Cohen, as well the parents of Terrence and Todd, Marc Lowenberg and Martin Cohen. The lawsuit alleged a failure to satisfy a judgment of $2,004,814.93 entered against another entity, The Icon Group, which the lawsuit alleged was owned and/or controlled by the Lowenbergs, the Cohens, and Defendant Icon Realty Management LLC. The lawsuit was captioned, *Miller v. Cohen et al.,* Index

---

[8] https://stabilizingnyc.org/our-work/what-is-predatory-equity/
[9] https://stabilizingnyc.org/

No.: 111380/2009, and was brought in the Supreme Court of the State of New York,

County of New York.

Plaintiff Heather Peet's Employment with Defendants

74.     Beginning around March 2015, Plaintiff Peet began employment with

Defendants Icon Realty Management LLC and T & T Realty Management LLC as

*Assistant Controller.*

75.     From March 2015 until she returned from FMLA-covered leave for lymphoma

treatment in late 2017, Plaintiff Peet reported directly to Defendant Lowenberg,

Defendant Cohen, and Defendant Hackel.

76.     From March 2015 until she returned from FMLA-covered leave for lymphoma

treatment in late 2017, Plaintiff Peet also reported to Defendants' Icon Realty

Management LLC and T & T Realty Management LLC *Controller,* Defendant Agnieszka

Dolinska a/k/a Agnes Dolinski.

77.     From March 2015 until she returned from FMLA-covered leave for lymphoma

treatment in late 2017, Plaintiff Peet's job duties and authority included, among other

things, supervising accounting employees, managing Accounts Payable, managing cash

flow for all 1,800+ buildings owned by Defendants, reviewing all new commercial

leases, and communicating directly with those who invested in Defendants' business

operations regarding Defendants' finances.

78.     When Plaintiff Peet initially began working for Defendants in March 2015, she

discovered that many accounting functions had been neglected and the accounting

books were in disarray. Moreover, she quickly learned there was a serious disconnect

and dysfunction between Defendant Dolinski and Defendants Lowenberg, Cohen, and

Hackel.

79.     Despite these challenges, Plaintiff Peet did her best under the circumstances to

perform her job, and over the next year Defendants Lowenberg, Cohen, and Hackel

entrusted Plaintiff Peet with additional responsibilities, including assisting with human

resources functions and handling more of Defendant Dolinski's job duties.

80.     On many occasions between March 2015 and March 2017, Defendant Lowenberg

complimented Plaintiff's work performance.

81.     Between March 2015 and March 2017, Defendants did not issue Plaintiff Peet

any written performance improvement plans or other written reprimands indicating

that her job was at risk due to performance concerns.

82.     On March 7, 2017, Plaintiff Peet was diagnosed with lymphoma.

83.     On that same day, March 7, 2027, Plaintiff Peet notified Defendant Lowenberg

that she had been diagnosed with lymphoma and would need to time off for treatment.

84.     During that March 7, 2017 meeting, Defendant Lowenberg instructed Plaintiff

Peet not to go on medical leave until Defendants could hire a temporary replacement

for her position while she was on leave.

85.    Shortly thereafter, Plaintiff Peet informed members of the accounting department of her lymphoma diagnosis. In response, each of the members of the accounting department offered their condolences and said they would help Plaintiff Peet perform her work if she needed it, except for Defendant Dolinski.

86.    In June 2017, Defendants Lowenberg and Cohen hired Defendant Louise Martin.

87.    Defendant Martin was formerly the *Controller* up until she was replaced by Defendant Dolinski in 2011.

88.    Shortly after Defendant Martin was hired, Plaintiff Peet, Defendant Martin, and another co-worker met for lunch. During the meeting, Defendant Peet reported to Defendant Martin that Defendant Dolinski and Defendant Lowenberg were intending to push her out of the company because of her lymphoma diagnosis. Martin told Peet that she would discuss it with Defendant Dolinski.

89.    Shortly thereafter, Defendant Martin sent a company-wide e-mail stating that she would be conducting interviews with everyone regarding their roles. However, Defendant Martin did not conduct an interview with Plaintiff Peet.

90.    A few days later, Defendant Martin held a company-wide meeting. During the meeting, she said in sum and substance that Plaintiff's job duties were being re-assigned to Defendant Dolinski. Defendant Martin also stated in sum and substance that if Plaintiff Peet and anyone else didn't like the changes, they knew "where the door was".

91.     Shortly thereafter, Plaintiff Peet met with Defendant Lowenberg and reported that Defendant Martin and Dolinski were attempting to push her out of the company because of her lymphoma diagnosis. During that meeting, Plaintiff Peet again requested medical leave to attend treatment sessions for her lymphoma. This time, Defendant Lowenberg told Plaintiff Peet that she could take medical leave, and she did so in late June 2017.

92.     When Peet returned from medical leave in September 2017, a document addressed to Plaintiff Peet from Defendants Lowenberg and Cohen purporting to be a Performance Improvement Plan ("PIP") was circulated company-wide by Defendant Martin via e-mail.

93.     The PIP purported to pin the failings of the accounting department under Defendant Dolinski's purview as far back as 2016 unfairly onto Plaintiff Peet, *including expressly during the period of time that Plaintiff Peet was on medical leave in 2017*. For example, under the heading "Relevant Past Occurrences and Active Disciplinary Actions" that "Financial Statements per the loan documents are due at the end of each month for the previous month. This did not happen for the *entire year* in 2017 [.]" (emphasis added).

94.     Further, the PIP stated that Plaintiff Peet would be fired on or before October 31, 2017 "if there was not prompt, sustained, and substantial improvement in these areas

or if additional performance or conduct issues arise...even if it is prior to the completion of the performance improvement plan...."

95.    The PIP also stated that during the period of the PIP, "[Defendant Martin] will meet with [Plaintiff Peet] every two weeks to discuss the performance from the past two weeks."

96.    Plaintiff Peet was humiliated by the fact that the PIP had been circulated to the entire company containing false accusations about her work performance.

97.    Realizing this was a setup to push her out of the company because she had a lymphoma diagnosis and had taken medical leave, Plaintiff Peet immediately reported that she was being retaliated against and discriminated against on those bases to Defendants Lowenberg, Cohen, Hackel, and Martin.

98.    But instead of doing anything to investigate or remediate, *Defendants Lowenberg and Martin e-mailed Plaintiff Peet to stop reporting that she was being discriminated and retaliated against.*

99.    When Plaintiff Peet tried to clarify the purported performance concerns addressed in the PIP with Defendants Lowenberg and Cohen, they told her to take it up with Defendant Martin.

100.    When Plaintiff Peet asked for clarification from Defendant Martin about the purported performance concerns in the PIP, *Defendant Martin admitted in an e-mail to Plaintiff Peet that not all of the performance concerns in the letter were Plaintiff Peet's fault,*

but refused to identify exactly why Plaintiff Peet was being placed on the purported PIP.

101.    When Plaintiff Peet attempted to meet with her co-workers to discuss her concerns and to get up to speed following her medical leave, Defendant Martin reprimanded Plaintiff Peet for talking with her co-workers, and told her that she could no longer have one-on-one meetings with her co-workers, and said that she should keep the door to her office shut.

102.    When Plaintiff Peet attempted to answer a co-worker question about an accounting formula, Defendant Martin interceded and reprimanded Plaintiff Peet for it via e-mail, and carbon-copied the reprimand to her co-worker.

103.    Around this time, Defendant Dolinski purposefully miscalculated Plaintiff Peet's paycheck. During the pay period in question, Plaintiff Peet, a salaried employee paid on a bi-monthly pay period, worked five of the ten workdays during that pay period due to her medical leave, and her annual salary at that time was $107,640.00. Therefore, she was entitled to $2,070.00 for that pay period. However, Defendant Dolinski issued her a check for only $1,495.00 for that period. When Plaintiff Peet reported the miscalculation to Defendants Dolinski and Martin via e-mail, Plaintiff Peet was told by Defendant Martin that Defendant Dolinski was actually following "standard protocol" of the company, and that Plaintiff Peet was not to discuss it further.

104.    When Plaintiff Peet again reported Defendants Martin and Dolinski's foregoing

discriminatory and retaliatory actions to Defendants Lowenberg, Cohen, and Hackel,

*they expressly told her to stop making reports of discrimination and retaliation to them, and*

*instead to direct any reports to Defendants Martin and Dolinski directly.*

105.    As a result of the foregoing, on or about December 22, 2017, Plaintiff Peet was

constructively discharged.

106.    On December 29, 2017, Defendant Lowenberg offered Plaintiff Peet $17,940 to

release him and his co-Defendants from all liability, including liability under the

NYCHRL and FMLA.

107.    On January 9, 2018, Defendant Lowenberg again e-mailed Plaintiff Peet, "I

sincerely hope you take my offer and don't choose to sue me."

108.    The above are just some of the examples of unlawful discrimination and

retaliation to which the Defendants subjected Plaintiff Peet.

109.    Plaintiff Peet claims a continuous practice of discrimination and retaliation and

makes all claims herein under the continuing violations doctrine.

110.    Plaintiff Peet suffered lost wages, embarrassment, humiliation, and loss to her

professional reputation, among other things, as a result of Defendants' foregoing

misconduct in violation of the FMLA and NYCHRL.

**FIRST CAUSE OF ACTION**
**(Family Medical Leave Act – Interference)**
**As Against All Defendants**

111.    Plaintiff repeats, realleges and reincorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

112.    29 U.S.C. Section 2615(a)(1) provides "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

113.    Plaintiff was entitled to FMLA-covered leave, and gave notice of her intention to take same to Defendants.

114.    Defendants interfered with, restrained, and/or denied Plaintiff rights under the FMLA, including FMLA leave and reinstatement to her same or equivalent position following her FMLA-covered leave by stripping her of her prior ability and duty to supervise and manage accounting employees, stripping her of her prior ability and duty to manage Accounts Payable, stripping her of her prior ability and duty to manage cash flow for all buildings owned by Defendants, stripping her of her prior ability and duty to review all new commercial leases, and stripping her of her prior ability and duty to communicate directly with investors in Defendants' business operations, among other abilities and duties granted to her prior to taking FMLA-related leave.

115.    As a result of the foregoing, Plaintiff is entitled an award of wages, employment benefits or other compensation denied or lost by reason of Defendants' violation of the FMLA, interest, liquidated damages, reasonable attorneys' fees, reasonable expert fees, and other costs of the action, and other equitable relief under 29 U.S.C. § 2617.

## SECOND CAUSE OF ACTION
### (Family Medical Leave Act – Retaliation)
### As Against All Defendants

116.    Plaintiff repeats, realleges and reincorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

117.    29 U.S.C. Section 2615(a)(2) provides "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

118.    By the foregoing, Plaintiff opposed Defendants practices made unlawful by the FMLA.

119.    Because of Plaintiff's opposition, Defendants caused Plaintiff to be discharged and otherwise discriminated against her upon her return from FMLA-protected leave.

120.    As a result of the foregoing, Plaintiff is entitled an award of wages, employment benefits or other compensation denied or lost by reason of Defendants' violation of the FMLA, interest, liquidated damages, reasonable attorneys' fees, reasonable expert fees, and other costs of the action, and other equitable relief under 29 U.S.C. § 2617.

## THIRD CAUSE OF ACTION
### (New York City Human Rights Law - Discrimination)
### As Against All Defendants

121.    Plaintiff repeats, realleges and reincorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

122.    At all times relevant, Plaintiff was, and is, a member of a class protected by the New York City Human Rights Law, N.Y.C. Admin. Code Section 8-107 et seq. ("NYCHRL") because she was diagnosed with and treated for lymphoma, and/or regarded her as having a disability.

123.    Plaintiff was and is fully qualified for their position with Defendants, and performed his job duties in a satisfactory manner.

124.    Defendants directly and/or by and through their employees, agents, and/or independent contractors caused her reprimand, demotion, and discharge, and treated Plaintiff less well than other non-disabled employees similarly situated because of Plaintiff's disability.

125.    Defendants' foregoing disability-based discrimination caused Plaintiff substantial emotional distress, embarrassment and humiliation, as well as lost wages and other forms of compensatory damages.

126.    Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's legally protected rights, which supports an award of punitive damages.

127.    Therefore, Defendants are liable to Plaintiff for back pay, front pay, emotional distress, reputational damage and other compensatory damages, physical injury damages, punitive damages, pre-judgment interest, attorneys' fees, costs and disbursements.

128.    Plaintiff also seeks to enjoin Defendants' practices made unlawful by the

NYCHRL and seeks an order requiring Defendants undergo anti-discrimination

training, setup a third-party hotline for employees and agents of Defendants to report

discrimination, and pay for a third-party investigator to investigate those complaints

and issue a report to the New York City Commission on Human Rights for five years

following the date of the order.

**FOURTH CAUSE OF ACTION**
**(New York City Human Rights Law - Retaliation)**
**As Against All Defendants**

129.    Plaintiff repeats, realleges and reincorporates by reference each allegation in the

foregoing paragraphs as though fully set forth herein.

130.    Plaintiff was, and is, a member of a class protected by the NYCHRL on the basis

of engaging in activity protected by NYCHRL Section 8-107(4).

131.    Plaintiff engaged in the foregoing protected activity as defined by NYCHRL

Section 8-107(4) and Defendants foregoing actions were in retaliation against Plaintiff

for engaging in the protected activity.

132.    Such foregoing actions have a "chilling effect" that would deter a reasonable

employee in Plaintiff's situation from engaging in the aforementioned protected

activities and such actions are therefore adverse employment actions pursuant to the

NYCHRL.

133.    Plaintiff's protected activities were a motivating factor in Defendants' foregoing treatment of Plaintiff, through which Defendants made affirmative efforts to punish Plaintiff for engaging in protected activities.

134.    As a result of Defendants' unlawful retaliatory actions, Plaintiff has suffered emotional distress and other compensatory damages.

135.    Therefore, Defendants are liable to Plaintiff for back pay, emotional distress, reputational damage and other compensatory damages, physical injury damages, punitive damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

136.    In addition to monetary damages, Plaintiff seeks to enjoin Defendants' unlawful practices.

137.    Plaintiff also seeks an order requiring Defendants undergo anti-retaliation training, setup a third-party hotline for employees and agents of Defendants to report retaliation, and pay for a third-party investigator to investigate those complaints and issue a report to the New York City Commission on Human Rights for five years following the date of the order.

**FIFTH CAUSE OF ACTION**
**(New York City Human Rights Law – Aiding and Abetting)**
**As Against All Defendants**

138.    Plaintiff repeats, realleges and reincorporates by reference each allegation in the foregoing paragraphs as though fully set forth herein.

139.     NYCHRL Section 8-107(6) provides "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

140.     By the foregoing conduct, Defendants each aided, abetted, incited, compelled, or coerced their co-defendants in doing acts forbidden under the NYCHRL, or attempted to do so, with the intent to discriminate and/or retaliate against Plaintiff in violation of the NYCHRL.

141.     As a result of Defendants' unlawful actions, Plaintiff has suffered emotional distress and other compensatory damages.

142.     Therefore, Defendants are liable to Plaintiff for back pay, emotional distress, reputational damage and other compensatory damages, physical injury damages, punitive damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

## JURY DEMAND

Plaintiff demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands a judgment against Defendants as follows:

a.   an order declaring the acts and practices complained of herein are in violation of the Family Medical Leave Act;

b.  an order declaring the acts and practices complained of herein are in violation of the New York City Human Rights Law;

c.  an order enjoining and permanently restraining the foregoing violations of the Family Medical Leave Act;

d.  an order enjoining and permanently restraining the foregoing violations of the New York City Human Rights Law;

e.  An order requiring Defendants undergo anti-discrimination and anti-retaliation training, setup a third-party hotline for employees and agents of Defendants to report discrimination and retaliation, and pay for a third-party investigator to investigate those complaints and issue a report to the New York City Commission on Human Rights for five years following the date of the order;

f.  an award of back pay in the amount of lost salary, salary increases, health care premiums, and other benefits of employment;

g.  an award of front pay;

h.  an award of compensatory damages;

i.  an award of punitive damages;

j.  an award of prejudgment interest;

k.  an award of reasonable attorneys' fees, expert witness fees, costs, and other disbursements of this action; and

l. such other relief as this Court deems just and proper.

Dated:       Brooklyn, New York
             February 26, 2020

                                        Respectfully submitted,

                                        By:_____

                                        Zachary J. Liszka, Esq.
                                        33 Nassau Avenue, Fl 2
                                        Brooklyn, New York 11222
                                        347-762-5131
                                        zach@employeelawyer.nyc
                                        www.employeelawyer.nyc